919 A.2d 669

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Victor MBA–JONAS.

No. 53, Sept. Term, 2005.

Court of Appeals of Maryland.

March 20, 2007.

Gail D. Kessler, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel for Atty. Grievance Com'n), for petitioner.

Melvin G. Bergman, Greenbelt, for respondent.

Argued before BELL, C.J. RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE and ALAN M. WILNER, (Retired, specially assigned), JJ.

BELL, C.J.

Bar counsel, acting on behalf, and with the approval, of the petitioner, the Attorney Grievance Commission of Maryland, filed in this Court, pursuant to Maryland Rule 16–751,[1] a Petition For Disciplinary or Remedial Action charging the respondent, Victor Mba–Jonas, with violating Rules 1.15, Safekeeping Property,[2] 8.1, Bar Admission and Disciplinary Matters,[3] and 8.4, Misconduct,[4] of the Maryland Rules of pro-

---

1. Maryland Rule 16–751, as relevant, provides:
   "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Maryland Rule 1. 15 provides, in pertinent part:
   "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
   "(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose.
   "(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

3. Pertinently, Rule 8.1 provides:
   "An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
   "(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

4. Rule 8.4, as relevant, provides:

fessional Conduct, as adopted by Maryland Rule 16–812, Maryland Rules 16–604, Trust Account–Required Deposits,[5] 16–607, Commingling of Funds,[6] and 16–609, Prohibited Transac-

"It is professional misconduct for a lawyer to:

\* \* \* \* \* \*

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice."

\* \* \* \* \* \*

**5.** Maryland Rule 16–604 provides:

"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

**6.** That Rule provides:

"a. *General Prohibition.* An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

"b. Exceptions.

"1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

"2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

tions,[7] all pertaining to his attorney trust account, and Maryland Code (2000, 2004 Repl.Vol., 2006 Supp.) §§ 10–304, Deposit of trust money,[8] 10–306, Misuse of trust money,[9] and 10–307, Disciplinary action,[10] of the Business Occupations and Professions Article.

We referred the case, pursuant to Rules 16–752(a),[11] to the Honorable Maureen Lamasney, of the Circuit Court for Prince

---

"3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners."

**7.** Rule 16–609 provides:

"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

**8.** Maryland Code (2000, 2004 Repl.Vol., 2006 Supp.) § 10–304 of the Business Occupations and professions Article provides:

"(a) Except as provided in subsection (b) of this section, a lawyer expeditiously shall deposit trust money into an attorney trust account.
"(b) Subsection (a) of this section does not apply if there is a court order to the contrary.
"(c) Notwithstanding subsection (a) of this section or any other law, a lawyer may disburse, at settlement in a real estate transaction, trust money that the lawyer receives in the transaction."

**9.** Section 10–306 proscribes a lawyer's "use [of] trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

**10.** Section 10–307 provides:

"A lawyer who willfully violates any provision of this Part I of this subtitle, except for the requirement that a lawyer deposit trust moneys in an attorney trust account for charitable purposes under §§ 10–303 of this subtitle, is subject to disciplinary proceedings as the Maryland Rules provide."

**11.** Rule 16–752(a) provides:

"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter

George's County, for hearing pursuant to Rule 16–757(c).[12]
After a hearing, at which the respondent was represented by
counsel, the court found the following facts by clear and
convincing evidence.

"During the investigation of a complaint made by a client of
the respondent, Hastings Newbury, Bar Counsel determined
that the escrow account of the respondent did not include any
record of the disbursement of his own fee as part of the
settlement in the Newbury case.

"On March 8, 2004, the respondent entered into a Condition-
al Diversion Agreement with the Attorney Grievance Commis-
sion . . . . .

"Pursuant to the Diversion Agreement, respondent obtained
a monitor, who made a written report to the Commission in a
letter dated June 24, 2004. The report involved four cases,
which the respondent settled and in which funds were dis-
persed to clients. Additional irregularities were detected in
three cases: those involving Davis Ebo, Anthony Ebo, and
Yawa Doghboe. Ultimately, in a letter dated May 20, 2005,
the Attorney Grievance Commission revoked the Conditional
Diversion Agreement.

"In the case of Davis Ebo, Respondent settled the case for
$5,500. Mr Ebo received $2,616.00, a medical provider re-
ceived $1,000.00, and the respondent's fee was $1,933.33. The
disbursement left a shortfall of $49.33. In the case of Antho-
ny Ebo, the matter was settled for $5,500.00. At the conclu-

---

a scheduling order defining the extent of discovery and setting dates
for the completion of discovery, filing of motions, and hearing."

12. Maryland Rule 16–757(c) provides:
"(c) Findings and conclusions. The judge shall prepare and file or
dictate into the record a statement of the judge's findings of fact,
including findings as to any evidence regarding remedial action, and
conclusions of law. If dictated into the record, the statement shall be
promptly transcribed. Unless the time is extended by the Court of
Appeals, the written or transcribed statement shall be filed with the
clerk responsible for the record no later than 45 days after the
conclusion of the hearing. The clerk shall mail a copy of the
statement to each party."

sion of the disbursement, $50.00 was left from the settlement that was not disbursed. Neither figure matches the settlement sheets or the monitor's report. Yawa Doghboe[ ] received a $7,000.00 settlement and $2,125.00 is unaccounted. There is no record that it was ever deposited in the escrow account.

"After reviewing the four cases included in the monitor's report, the investigator obtained the bank records of the respondent's escrow account and further irregularities were found. On three occasions, from June of 2003 until June of 2004, the account was overdrawn. First, on June 9, 2003, a deposit of a $2,286.00 check from State Farm was made. The payee was State Farm and under the column labeled 'description' was the name Felisha Ikpeama. A $100.00 deposit occurred on that day. On June 13, 2003, a check payable to Hillary Ikpeama as settlement of an accident in the amount of $4,490.00 was deducted from the account. This caused the account to have a negative balance of $431.26. A cash deposit of $300.00 was made: the account was still negative in the amount of $131.26. Two overdraft fees in the amount of $30.00 took the account to a negative balance of $191.26 on June 16, 2003.

"On June 23, 2003, a deposit from M[AIF] Insurance [on] behalf of another client, Monico Navaro, was made in the amount of $1,000.00. The account balance was then $808.78. Obviously, the settlement meant only for Monico Navaro was used for other purposes.

"Secondly, on August 21, 2003, another client, Chile Mwaiwu, received a check from the respondent for $2,466.80 as settlement of his claim. The check was post dated for August 26, 2003; however, the client presented it for payment immediately. This created a negative balance of $2,308.61.

"Finally, on June 29, 2004, the respondent wrote a check for Metro Med & Rehab for $2,000.00 on behalf of client Gerri Belt and dated it the 30th. The check was presented for payment on the 29th and honored at that time. The account was again in the negative in the amount of $1,234.90. A

$2,500.00 deposit of insurance proceeds brought the account to $1, 265.10.

"Additionally, the respondent also represented Yawa Doghboe in early 2004 and settled his case. The settlement money was not deposited into his escrow account; however, the respondent's account reflects $4,875.00 in disbursements. His disbursement sheet reflects $6,595.00.

"The respondent testified to the careless nature of the management of his escrow account: he did not reconcile the account monthly, he left 'PIP' money in the account to cover fees and he left fees in his escrow account.

"Additionally, he maintained inaccurate settlement sheets and kept very few records. When requested, he had to get copies of his escrow account records from the bank to provide to the Commission; he did not keep a ledger and post dated check[s] to accommodate clients."

From the foregoing findings of fact, the hearing court concluded that the respondent committed most, but not all, of the charged violations. Reiterating that the respondents' records "do not reflect the disbursement of his fee," that some of the funds associated with the Ebos, Doghboe, Mwaiwu and Belt representations "were not used for the persons intended" and that the respondent did not keep, or preserve complete records of his representations, it concluded that Rule 1.15 of the Rules of Professional Conduct and Rules 16–604 and 16–607 were violated.

The hearing court also found that the respondent violated Rule 8.4(a). It did not find any other Rule 8.4 violation, however. It explained:

"... [T]he respondent did not have the intent to deceive. The offenses occurred due to sloppiness, not dishonesty. There was no forgery, fraud, lack of candor or attempts to conceal his records or his acts."

Nor did the hearing court conclude that there was a violation of Rule 8.1. While it acknowledged that "the respondent did not respond as promptly as would have been ideal, he did

respond." Indeed, the hearing court "found the respondent to be quite candid and forthcoming." Accordingly, it concluded that he "did not knowingly fail to respond to a lawful demand for information."

No mention was made by the hearing court of Rule 16–609 or any of the charged statutory violations. It made mitigation findings, as follows:

"First, while the respondent's maintenance of his account was in violation of the Rules of Professional Conduct and clearly he did not maintain it as required, this fact does not reflect an ulterior motive. Clearly, he had no intent to defraud or steal from his clients. In fact, many of his problems resulted from his desire to accommodate his clients and to keep them satisfied with his representation.

"In the cases of Davis Ebo and Anthony Ebo, he gave them more in settlement tha[n] previously agreed. This created inaccurate settlement sheets that resulted in the filing of the complaint by the bar counsel.

"He gave Chile Mwaiwu and Hassan Samuser post dated checks to spare them a trip back to his office, the latter resulting in the negative balance of August 21, 2003.

"Secondly, during this period of time, the respondent was dealing with extremely distracting family problems. His mother was suffering from a life threatening illness, which eventually took her life. His brother-in-law, who was without insurance, required dialysis.

"While his wife was available to help, she and the respondent are the parents of six (6) children and his wife maintained employment as well.

"As a result, the respondent was forced to cut back on his practice. He was coping with stress at work and at home.

"Lastly and most importantly, the respondent testified without contradiction that he has taken the appropriate remedial actions to maintain his escrow account in accordance with the Rules of Professional Conduct, and that his account is now in order."

Only the petitioner has filed exceptions. It does not challenge or take exception to the hearing court's findings of fact, only its conclusions of law. Thus, the findings of fact made by the hearing court are established. Rule 16–759(b)(2)(A).[13] *See Attorney Grievance Comm'n v. Logan,* 390 Md. 313, 319, 888 A.2d 359, 363 (2005); *Attorney Grievance Comm'n v. Hodgson,* 396 Md. 1, 6–8, 912 A.2d 640, 644 (2006). Specifically, the petitioner submits that the hearing court erred in failing to find that the respondent violated Rule 16–609 and § 10–306, both relating to the misuse of the respondent's trust account. It argues that the propriety of such findings is patent when "[t]he fact that the Respondent did not keep Monico Navaro's funds intact, used other client funds to cover post dated checks and the Yawa Dogboe [14] disbursements, as well as never accounting for $2,125.00 of the Dogboe settlement" is considered.

It also disagrees with the conclusion that a Rule 8.1 violation had not been established. In support of this exception, the petitioner relies on the testimony of its investigator, and the inferences it draws from that testimony, with regard to the respondent's failure to produce, at the investigator's request, records additional to the settlement sheets, banks statements and cancelled checks the respondent did produce. Maintaining that the investigator's testimony in this regard is uncontradicted, it asks this Court to sustain the exception.

The petitioner's final exception relates to the hearing court's failure to find a violation of Rule 8.4(d). Satisfied, apparently, that the hearing court adequately explained why it did not find a Rule 8.4(c) violation, in addition to the Rule 8.4(a) violation, it asserts that the explanation does not suffice insofar as Rule 8.4(d) is concerned. On the contrary, the petitioner argues,

---

13. Maryland Rule 16–759(b)(2)(A) provides:
    "(A) *If No Exceptions Are Filed.* If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any."

14. In the hearing court's *Findings of Fact And Conclusions of Law,* this name is spelled "Doghboe."

the causes of the misconduct found by the hearing court tend to affect, if not implicate, the integrity of the process of administering justice. Thus, it asserts, "[b]ased on Judge Lamasney's findings, the Respondent should be found to have violated Maryland Rule of Professional Conduct 8.4(d)."

■ We review *de novo* the hearing court's conclusions of law, Rule 16–759(b)(1);[15] *Hodgson,* 396 Md. at 6–8, 912 A.2d at 644; *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Attorney Grievance Comm'n v. Joehl,* 335 Md. 83, 88, 642 A.2d 194, 196 (1994) (noting that the ultimate decision as to whether an attorney has engaged in professional misconduct rests with this Court). Exceptions to conclusions of law will be overruled when, the fact findings not being clearly erroneous, the conclusions are supported by the facts found. *Attorney Grievance Comm'n v. Manger,* 396 Md. 134, 146–147, 913 A.2d 1, 8 (2006).

■ As we have seen, the hearing court relied on its findings in the two Ebo matters and the settlements involving Doghboe, Mwaiwu and Belt to conclude that funds intended for their use or benefit "were not used for the persons intended" and, thus, to conclude that the respondent violated Rule of Professional Conduct 1.15 and Rules 16–604 and 16–607. Rule 16–609 prohibits the use of funds deposited in an attorney's trust account "for any unauthorized purpose." Similarly, § 10–306 of the Business Professions and Occupations Article proscribes the use of trust money "for any purpose other than the purpose for which the trust money is entrusted to the lawyer." The misconduct found by the hearing court, the failure to use funds for the benefit of the person intended, is as supportive of a violation of Rule 16–609 and § 10–306 as it is of a violation of the Rules as to which there has been no challenge, if not more so. We sustain the petitioner's exception to this conclusion.

---

**15.** Maryland Rule 16–759(b)(1) provides:
"(1) *Conclusions of Law.* The Court of Appeals shall review de novo the circuit court judge's conclusions of law."

With respect to the petitioner's exception to the failure to find a violation of Rule 8.4(d), that the respondent engaged in conduct prejudicial to the administration of justice, we note that the hearing court was unequivocal that, in addition to certain discrete violations related to his escrow account, including overdrawing his trust account on several occasions, the respondent managed his escrow account "careless[ly]," failing to reconcile it monthly, "maintained inaccurate settlement sheets and kept very few records."

In *Rheb v. Bar Ass'n of Baltimore City,* 186 Md. 200, 46 A.2d 289, 291 (1946), this Court considered the interpretation of the phrase, "conduct prejudicial to the administration of justice." We made clear in that case that " 'conduct prejudicial to the administration of justice,' delegates or confirms to the courts the power and duty to consider particular conduct of one who is an officer of the court, in relation to the privileges and duties of a public calling that specially invites complete trust and confidence," *id.* at 205, 46 A.2d at 291; see *Attorney Grievance Comm'n of Maryland v. Post,* 350 Md. 85, 100, 710 A.2d 935, 942 (1998), and that it should not be given "restricted meaning." *Rheb,* 186 Md. at 205, 46 A.2d at 291. Thus, "In the last analysis the duty rests upon the courts, and the profession as a whole, to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner." *Id.*

The manner in which an attorney has handled his or her escrow account has been held to be conduct prejudicial to the administration of justice. Post, 350 Md. at 99, 710 A.2d at 942. *See Attorney Grievance Comm'n of Maryland v. Powell,* 369 Md. 462, 469, 800 A.2d 782, 786–87 (2002) (concluding that conduct constituting violations of MRPC 1.15(a) and Maryland Rule 16–607 also violated Rule 8.4(d) of the Rules of Professional Conduct). Accordingly, we sustain the petitioner's exception as to Rule 8.4(d).

We overrule the petitioner's other exception. That there is testimony contradicting the respondent and on the basis of which the hearing court could have found a rule violation, but

did not, is not a basis for sustaining an exception to a conclusion of law. That is the substance and the essence of the petitioner's argument for our concluding that the respondent violated Rule 8.1. We decline the invitation to do so.

The petitioner recommends as sanction an indefinite suspension. Reiterating the violations the hearing court found that the respondent committed, it distinguishes this case from those in which a more lenient sanction was imposed, *Attorney Grievance Comm'n v. Obi*, 393 Md. 643, 904 A.2d 422 (2006) (30 day suspension); *Attorney Grievance Comm'n v. Rose*, 383 Md. 385, 859 A.2d 659 (2004) (indefinite suspension with the right to reapply in 6 months); *Attorney Grievance Comm'n v. McClain*, 373 Md. 196, 817 A.2d 218 (2003) (30 day suspension); *Attorney Grievance Comm'n v. Dicicco*, 369 Md. 662, 802 A.2d 1014 (2002) (indefinite suspension with the right to reapply after 90 days), on the basis that, unlike in those cases, "Respondent was given an opportunity to cure his escrow account and failed to make any corrective changes to the account." The opportunity to which the petitioner refers, and mentions expressly, is the fact that "the respondent entered into a Conditional Diversion Agreement where he was to properly maintain his escrow account by keeping records and to stop commingling monies in that account."

The respondent, as indicated, has taken no exceptions. He has, however, made a recommendation as to sanction: that the Court impose a reprimand. He relies on *Obi*, which he distinguishes on the basis that, there, the respondent was also convicted of a Rule 8.1(b) violation, by knowingly failing to respond to Bar Counsel's lawful demand for information in a disciplinary matter. Moreover, the respondent emphasizes the hearing court's observation that many of the respondent's problems were the result of his "desire to accommodate" them and "keep them satisfied with his representation."

█ The purpose and goal of attorney discipline are well settled: to protect the public and not to punish the erring attorney. *Attorney Grievance Comm'n of Maryland v. Rees*, 396 Md. 248, 254, 913 A.2d 68, 72 (2006). *See Attorney*

*Grievance Comm'n v. Parker*, 389 Md. 142, 155, 884 A.2d 104, 112 (2005); *Attorney Grievance Comm'n v. Culver*, 381 Md. 241, 283–84, 849 A.2d 423, 448–49 (2004). In *Rees*, we summarized:

> "That purpose is achieved, the public is protected, when the sanctions are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 533, 819 A.2d 372, 375 (2003). While the circumstances of each case-the nature and effect of the violations-are critical, and ordinarily decisive, factors in determining the severity of the sanction to be imposed, *Parker*, 389 Md. at 155, 884 A.2d at 112, there are other important factors we have identified, including 'the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the Respondent to continue in practice, and any mitigating or aggravating factors,' *Attorney Griev. Comm'n v. Monfried*, 368 Md. 373, 396, 794 A.2d 92, 105 (2002), the attorney's remorse for the misconduct, *Attorney Griev. Comm'n v. Wyatt*, 323 Md. 36, 38, 591 A.2d 467, 468 (1991), the likelihood of repetition of the misconduct, *Attorney Grievance Comm'n v. Freedman*, 285 Md. 298, 300, 402 A.2d 75, 76 (1979), and the attorney's prior grievance history. *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 362, 347 A.2d 556, 561 (1975)."

*Id.* at 254–55, 913 A.2d at 72.

■ This case does bear a resemblance to *Obi*, and a striking one. In addition, the respondent is correct, the respondent in *Obi* was found to have failed to cooperate with bar counsel. On the other hand, it is unlike *Obi* in that we have sustained the petitioner's exceptions with regard to charged Professional Conduct Rule 8.4(d), Rule 16–609 and § 10–306. Furthermore, the respondent, as the petitioner points out, was afforded the opportunity of a conditional diversion agreement. That agreement was terminated when the monitor charged with checking and keeping an eye on the

respondent's escrow account, signaled a problem and it was learned that the respondent had not changed his accounting practices. These differences with *Obi*, more than the one emphasized by the respondent, support a sanction different from, and greater than, what we imposed in that case. Moreover, we are satisfied that it should require the respondent to demonstrate lessons learned and, critically, that the sloppiness which has characterized his handling of his escrow account will no longer obtain. The appropriate sanction, therefore, is, we believe, an indefinite suspension with the right to reapply for readmission after 90 days.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST VICTOR MBA-JONAS.