929 A.2d 47

## ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Rex B. WINGERTER.

Misc. Docket (Subtitle AG) No. 71, Sept. Term, 2005.

Court of Appeals of Maryland.

July 30, 2007.

Raymond A. Hein, Assistant Bar Counsel, (Melvin Hirshman, Bar Counsel for the Attorney Grievance Commission of Maryland), Crownsville, for Petitioner.

Carlton M. Green, Esq., College Park, MD, for Respondent.

Argued before BELL, C.J., and RAKER, CATHELL, HARRELL, BATTAGLIA, GREENE, and ALAN M. WILNER, (Retired, specially assigned), JJ.

BELL, C.J.

Rex B. Wingerter, the respondent,[1] was convicted, following the tender of a guilty plea in the United States District Court

---

1. The respondent stands suspended from the practice of law, this Court having entered an order to that effect on May 4, 2006, pursuant to Maryland Rule 16–771(c). Rule 16–771 provides that an order of temporary suspension is available when the respondent has committed a serious crime. Rule 16–701(k)(3) defines "serious crime" as "a crime that is in at least one of the following categories: (1) a felony under Maryland law, (2) a crime in another state or under federal law that would have been a felony under Maryland law had the crime been committed in Maryland, and (3) a crime under federal law or the law of any state that is punishable by imprisonment for three years or more." The hearing court, having reviewed that definition in light of the definition of "Professional misconduct" and the proscriptions of Rule 8.4(a), (b) and (c), opined:

for the Eastern District of Virginia, of misprision of a felony.[2] In consideration of the plea of guilty, the United States Government dismissed the remaining counts of a multi-count Indictment that earlier had been filed against him. The respondent was thereafter sentenced to a period of imprisonment, a year of supervised release, community service and a fine. Subsequently, Bar Counsel, acting on behalf, and with the approval, of the petitioner, the Attorney Grievance Commission of Maryland, filed in this Court, pursuant to Maryland Rules 16–751[3] and 16–771,[4] a Petition for Disciplinary or

---

"Noting the acknowledged plea of guilty entered by the Respondent on August 26, 2005, in the United States District Court for the Eastern District of Virginia . . . to 18 U.S.C. Section 4, misprision of a felony . . ., said plea undisputedly qualifies (by clear and convincing evidence) as a serious crime under Maryland Rule 16–701(k)(3)—*a crime under Federal law punishable by imprisonment for three years or more.* It matters not therefore whether 'misprison of a felony' is a crime under Maryland law."

That analysis is consistent with what this Court necessarily must have concluded when issuing its temporary suspension order.

2. Misprision of a felony, codified at 18 U.S.C. Section 4, a federal, but not a Maryland, crime, is committed when someone, "having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known to some judge or other person in civil or military authority under the United States." It is punishable by fine and imprisonment for not more than three years, or both.

3. Maryland Rule 16–751, as relevant, provides:
"(a) *Commencement of disciplinary or remedial action.* . . .
"(2) *Conviction of Crime; Reciprocal Action.* If authorized by Rule 16–771(b) or 16–773(b), Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals without prior approval of the Commission. Bar Counsel promptly shall notify the Commission of the filing. The Commission on review may direct the withdrawal of a petition that was filed pursuant to this subsection."

4. Maryland Rule 16–771(b) provides:
"(b) *Petition in Court of Appeals.* Upon receiving and verifying information from any source that an attorney has been convicted of a serious crime, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). The petition may be filed whether the conviction resulted from a plea of guilty, nolo contendere, or a verdict after trial and whether an appeal or any other post-conviction proceeding is pending. The petition shall allege the fact of the conviction and include a

Remedial Action. In that petition, referencing the respondent's conviction and, indeed relying on it, the respondent was charged with violating Rule 8.4, Misconduct,[5] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812.

We referred the case, pursuant to Rule 16–752(a),[6] to the Honorable Richard H. Sothoron, Jr., of the Circuit Court for Prince George's County, for hearing pursuant to Rule 16–757(c).[7] Following that hearing, Judge Sothoron found facts, by clear and convincing evidence, as follows:

request that the attorney be suspended immediately from the practice of law. A certified copy of the judgment of conviction shall be attached to the petition and shall be prima facie evidence of the fact that the attorney was convicted of the crime charged."

5. Rule 8.4, as relevant, provides:
"It is professional misconduct for a lawyer to:
"(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
"(c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation ... [.]"

6. Maryland Rule 16–752(a) provides:
"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

7. Maryland Rule 16–757(c) provides:
"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

"1. Respondent Rex B. Wingerter, a member of the Maryland Bar since 1986, entered a plea of guilty in the United States District Court for the Eastern District of Virginia (Judge Ellis) on August 26, 2005, by way of a criminal information, to 'misprision of a felony,' in violation of 18 U.S.C., Section 4.

"2. The charge of 'misprision of a felony' is a felony under Federal law and carries a penalty of not more than three years, in addition to being fined.

"3. That the transcript of the August 26, 2005, plea proceedings clearly reflected the voluntariness of the Respondent's plea and the fact that he was represented by competent and experienced counsel.

"4. That the written plea agreement and related statements of facts entered into the record on August 26, 2005, clearly and concisely described the nature and extent of Respondent's criminal culpability in committing a misprision of a felony, the time frame of which covered a period from 2000–2004.

"5. That the statement of facts is unambiguous in describing dishonest, fraudulent and deceitful conduct by the Respondent over a time frame from 2000 to 2004 while Respondent was employed as in-house counsel for Global Recruitment and Immigration Services, Inc. (GRIS) based in Falls Church, Virginia.

"6. That the conduct referenced in paragraph 5 included but was not limited to:

"a. Respondent's awareness that his signature on various immigration documents was being forged.

"b. Respondent's awareness that the signatures of immigrant clients of GRIS were being forged.

"c. Respondent's awareness that a light box was being utilized to forge signatures.

"d. Respondent's awareness that hundreds of ETA 750 applications were submitted on behalf of Cleaners of America (a potential employer of immigrant clients of

GRIS) even though Cleaners of America did not have the capacity to hire such large numbers of immigrants.

"e. Respondent's awareness that he was not, in his capacity as GRIS' in house legal counsel, the attorney of record for the applicants referenced in paragraph d.

"f. Respondent's awareness that GRIS was under investigation by the Federal government regarding the submission of hundreds of ETA 750 forms on behalf of immigrant clients.

"g. Respondent's awareness [that] GRIS was misinforming its immigrant clients regarding the status of their ETA 750 applications.

"h. Respondent's awareness of GRIS charging its immigrant clients fees to prepare ETA 750 forms.

"7. That the conduct referred to in paragraph 6 and its subparts was never reported in any manner to law enforcement authorities by the Respondent.

"8. That Respondent was sentenced by [Judge Ellis, consistent with the plea agreement and as the hearing court had earlier reported III, and that] this sentence was within the Federal guideline range and much more lenient than sentences imposed as to other GRIS principals."

"9. That as of the date of the November 8, 2006, Attorney Grievance hearing before this Court, Respondent had successfully completed serving his six months of incarceration in Cumberland, Maryland, and was currently serving his six months of community confinement in Rockville, Maryland."

The hearing court concluded that the charge of misprision of a felony, while not a crime in Maryland "qualifies as a serious crime in accord with Maryland [Rule] 16.701(k)(3)." It concluded further that it was supported by "the unequivocal and unambiguous statement of facts" offered as the factual basis for the plea and that the conduct establishing that charge "constituted misconduct as defined by Rule 8.4(b) and (c), Maryland Rules of Professional Conduct." Indeed, the hearing court expressly determined, by clear and convincing evidence, that "Respondent committed a criminal act involving

dishonesty, fraud and misrepresentation, which reflected adversely on his honesty, trustworthiness and fitness as a lawyer."

Rule 8.4 (b) and (c) proscribe, respectively, criminal acts which call into question a lawyer's honesty or trustworthiness and conduct "involving dishonesty, fraud, deceit or misrepresentation." In determining that misprision of a felony was a proper predicate for those misconduct charges, to which the respondent was called to answer, the hearing court relied on the factual basis for the respondent's plea, as indicated. It also relied on the plea agreement itself, noting that, in that agreement, the respondent indicated that he was pleading guilty "because [he was] in fact guilty of the charged offense," that he "admit[ted] the facts set forth in the statement of facts filed with this plea agreement and agree[d] that those facts establish guilt of the offense charged beyond a reasonable doubt." With regard to the factual basis for the plea, significantly, the respondent, having acknowledged the existence, timing and details of, and the participants engaged in, the conspiracy to commit immigration fraud, making false statements and encouraging aliens to enter the United States unlawfully, identified by the government, confessed that he not only

"did not notify federal judicial or law enforcement authorities of the fraud [or] take steps to stop the fraud[, he] took at least two steps to conceal the crime. First, [he] instructed employees at Global to start writing their initials next to his signature whenever they forged it, but further instructed the same employees to refrain from marking their initials whenever they forged an immigrant's or an employer's signature on an ETA 750 application [8] (or related documents). [He] instructed the employees so because he was

---

**8.** "[A]n ETA 750 application is an application required by the immigration laws and the regulations prescribed thereunder." The respondent agreed, in the statement of facts, that substantially more than one hundred ETA 750 applications were involved in the criminal violations referenced and that each of them contained "false statements that were material to their adjudication."

concerned that if the employees began to initial the forged signatures of the immigrants and employers on the ETA 750 applications, the initials would expose the fact that the signatures were in fact forgeries. Second, [he] repeatedly informed the Department of Labor and certain immigrant clients that certain of the employer sponsors had decided to abandon certain ETA 750 applications for economic reasons when in fact he knew or should have known that it was because the government was investigating Global."

Statement of Facts, Paragraph 8. As significantly, the respondent acknowledged, in paragraph 9 of the statement of facts, that he "abused a position of public trust in the commission of his offense," and, in paragraph 11, that the actions in which he engaged and which were recounted in the statement of facts "were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason."

In addition, the hearing court determined that the plea and sentencing proceedings are confirmatory. The respondent admitted during the plea proceedings that he was aware of the conspiracy, that "he saw acts that should have led [him] to understand and realize that the . . . there was a conspiracy to fraudulently bring in non-citizens into the United States." That conspiracy consisted of forging signatures of the aliens and reporting false job offers and job descriptions. Moreover, having heard the recitation of the statement of facts by the Assistant United States Attorney, who, in addition to reiterating the facts surrounding the fraud conspiracy, repeated, detailing the specifics, the respondent's admission that he took "active steps to . . . conceal the fraud, and not to report it to competent authorities," the respondent responded, "Yes, your Honor," to the trial judge's inquiry as to its truth and accuracy.

Consistently, the respondent, at the sentencing proceeding, in allocution, advised the trial court:

"... I am before this Court to be sentenced for misprision of a felony, for failing to report what I believed to be fraudulent contact—to be fraudulent conduct at my former

place of employment, Global Recruitment and Immigration Services.

"I make no excuses for my conduct. I made a series of bad choices during my tenure at Global and I and my family have suffered tremendously from my actions."

The hearing court also made findings with regard to the respondent's testimony in mitigation. They are:

"13. That the Respondent, by way of his testimony presented at the November 8, 2006, attorney grievance hearing, contradicted the unambiguous statement of facts that served as the factual basis of his plea. Specifically, the Respondent:

"a. disputed the time frame as to when he became aware of any wrongdoing by GRIS principals;

"b. disputed committing any fraudulent conduct;

"c. disputed possessing any criminal intent;

"d. attributed his actions to bureaucratic sloppiness.

"14. That the Respondent's testimony on November 8, 2006, focused upon minimizing his criminal culpability as outlined in the unambiguous statement of facts referenced herein. Further, this position contradicted Respondent's admission, without excuse, of guilt before Judge Ellis at both the plea and sentencing proceedings of August 26 and November 18, 2005, respectively.

"15. That Respondent's testimony on November 8, 2006, reflected little, if any, remorse regarding his conduct as in house counsel for GRIS and the resulting plea and sentencing for misprision of a felony.

"16. That the character evidence presented at the November 8, 2006, hearing, in addition to prior character references provided at the sentencing hearing on November 18, 2005, all confirmed, as did the pre sentence investigation, that the Respondent enjoyed a well earned reputation as a respected member of the bar (prior to his employment with GRIS), specializing in immigration law, a community activist, a provider of pro bono services, and devoted husband and father of two teenage children.

"17. That other than the findings set forth in paragraph 16, the Respondent has failed to prove by preponderance of evidence, any additional mitigating factors."

The same factors—the plea agreement, the statement of facts in support, the respondent's responses during the plea and sentencing proceedings—that supported the Rule 8.4 findings and conclusion, the hearing court found undermined and, indeed, all but negated, the respondent's mitigation testimony. Accordingly, it rejected that testimony.

The respondent, unlike the petitioner, that took no exceptions to either the hearing court's findings of fact or conclusions of law, filed *Exceptions of Rex B. Wingerter, Respondent, To The Findings And Conclusions Of The Hearing Judge And Opposition To The Recommendation Of Petitioner.* In that pleading, he took three exceptions to the findings of facts made by the hearing court and the conclusions it drew and offered his reasons for urging this Court to reject the recommendation of disbarment made by the petitioner.

The thrust of the first exception, to Paragraph 4, was to dispute the clarity and conciseness with which his criminal conduct was described. Thus, noting that he was not alleged to have been "a direct co-conspirator," only "that he was present at Global Recruitment and Immigration Service, Inc. ... at the time in question as in-house counsel, and that during that time, and based on his activities, he came to have an awareness that the conspirators were committing the immigration crimes in question," and that there was no specific allegation, either in the plea agreement or the statement of facts in support of that agreement, of a definite time frame when the respondent became aware of those crimes, the respondent argues that "Paragraph 4 of the Hearing Judge's Findings of Fact and Conclusions of Law is erroneous when it concludes that the Statement of Facts and Plea Agreement clearly and concisely 'described the nature and extent of the Respondent's criminal culpability in committing a misprision of a felony." Necessarily, he submits, therefore, that "his testimony at the November 8, 2006 hearing is very relevant as

to what he knew and when he knew it in judging his culpability."

The respondent's second exception is to paragraphs 5 and 6 of the Findings of fact and Conclusions. Like the first, he decries the manner in which the respondent's conduct is described and characterized, and the time frame during which that conduct occurred, arguing that the factual basis for the plea "does not unambiguously describe dishonest, fraudulent or deceitful conduct by Respondent over a time frame from 2000–2004." To make the point, the respondent directs our attention to the Statement of Facts, Paragraph 7, which, he maintains, "fails to specifically state when, during the course of the conspiracy perpetuated by others, ... Respondent became aware of their actions." That, he submits, contradicts Paragraph 5 and, in fact, renders it clearly erroneous.

With regard to the Sixth Paragraph, the respondent maintains that his subjective understanding of the facts enumerated in Paragraph 7 of the Statement of Facts is relevant and critical to the determination of his culpability. In that regard, he refers us to the evidence addressing each of the statements made in the Statement of Facts, which, he asserts, is both significant and relevant. That evidence, he explained, illuminated his subjective understanding of the facts, which was in each instance, contrary to that acquired by the hearing court from the plea agreement and the statement of facts in support of the plea. For example, conceding that he knew, and, indeed, permitted his signature to be signed on "pro forma" documents, the respondent argues that his signature was not a forgery and that he "had no fraudulent intent when he authorized employees of Global to sign his name to the routine appearance of counsel on immigration forms." Similarly, he denied knowing that his signature had been signed to hundreds more documents than he authorized until "after the indictment." To like effect, the respondent explained that, although he was aware that the signatures of aliens and corporate sponsors were being signed to documents by persons other than the alien and subject corporate sponsor, he

trusted the representation of Global's management that it had permission to do so.

The respondent complains that, rather than accept his subjective understanding of the facts, "[t]he Hearing Judge focused solely on the broad record of conviction and concluded that the Respondent's behavior at Global was 'unambiguous ... dishonest, fraudulent and deceitful' ... [and] inferred that the Respondent's explanations almost to be an extension of his offense by construing that Respondent 'repeatedly attempted to excuse or minimize his criminal culpability.'" Further, he argues:

"It is certain that particular facts within the broad plea agreement did not comport with the Respondent's specific, subjective understanding of his understanding of events. But the Respondent certainly did not endorse, and there is nothing in the record to support, the embellished dialogue between the Assistant U.S. Attorney and Judge Ellis where they assume the Respondent 'knew he was complicit in fraud, and he knew it for a long time, and even offered a suggestion on how it could be concealed, is that right?'"

Thus, the respondent submits that the hearing court's reliance on the plea and sentencing proceedings contradicting his contentions, and disregarding his subjective understanding of the facts "is totally wrong." By so relying, he says, the hearing court "mistakenly interpret[ed] the Respondent's admission that he knew of Global's wrongdoing, which was the basis of the plea to misprision of a felony, to mean that the Respondent took part and was complicit in the substantive offenses of the co-defendants." To the respondent, considered in light of his testimony at the disciplinary hearing and the subjective understanding of the facts it conveyed,

"[t]here was no evidence presented by the Assistant U.S. Attorney that the Respondent engaged in the dishonest, fraudulent and deceitful conduct embodied in the underlying, substantive offenses."

With respect to the allegations in Paragraph 8 of the Statement of Facts, the respondent explained his failure to

inform the proper authorities of the fraudulent immigration activities by stating that he became aware of the information only after "the indictments had been issued" and

"Concerning the two steps 'to conceal the crime,' first, Respondent understood Global employees had authorization to sign the names of immigrant's or employer's signatures on the forms. Second, Respondent insisted in plea negotiations that the phrase '*knew or should have known*' be inserted because the government insisted on declaring that certain applications were withdrawn solely on account of their investigation, which Respondent firmly believed was not true."

The respondent's third exception relates to the nature of the offense of misprision of a felony. He maintains that that offense "is not a criminal act involving dishonesty, fraud and misrepresentation" and his conduct constituting the offense "does not evidence dishonesty, fraud or misrepresentation." The factor critically important to the respondent's position is that "[t]he Respondent's testimony and the Statement of Facts supporting the conviction of misprision of a felony do not establish conduct that embodied dishonesty, fraud or deceit under Maryland disciplinary law." Thus, stressing that he was not charged as a co-conspirator and that his admissions of acquiring knowledge of fraud being committed by Global and the named individuals and not reporting it supported his conviction of the offense of misprision of a felony—he argues on the theory of willful blindness, citing *United States v. Messer*, 139 F.3d 895, 1998 WL 112532 (4th Cir.1998)[9]—the

---

**9.** Judge Chasanow noted in *State v. McCallum*, 321 Md. 451, 458, 583 A.2d 250, 253 (1991) (Chasanow, J., concurring), that willful blindness,

"exists where a person believes that it is probable that something is a fact, but deliberately shuts his or her eyes or avoids making reasonable inquiry with a conscious purpose to avoid learning the truth." Willful blindness is not the only theory that would support the respondent's guilt of misprision of a felony. He was an immigration expert and, therefore, setting aside any requirement to be bound by the respondent's subjective understanding, it may be inferred that the respondent's acquisition of knowledge of fraudulent conduct was the

respondent maintains that he "never possessed or ever admitted to having the *mens rea* to commit those [substantive] crimes." He argues further that, because "[h]e never participated in the offenses of his co-defendants[, h]e can not be, and he was not, held responsible as a co-conspirator for the crime he failed to report."

Acknowledging and conceding, as he must, that paragraph 8 of the statement of facts in support of the plea agreement states that, in addition to having knowledge of the crimes, the immigration fraud and false statements, he took at least two steps to conceal the crimes, the respondent proffers, nevertheless, that his admission in that paragraph "reasonably satisfied" the concealment element and, in any event, any steps aimed at concealment did not rise to the level of deceit, intentional dishonesty or misrepresentation. More particularly, he argues:

"In the Respondent's circumstances, he agreed that he 'concealed' purported forged names for individuals who he subjectively believed had authorized their signing. Similarly, he consented to 'concealing' the truth about abandoned applications because the paragraph specifically included a negligent, 'should have known' standard."

Aware that concealment may have a more sinister motivation, the respondent denies that his conduct in this case could be equated with "the more egregious offenses of making false statements or purposefully deceiving a government authority" or involved moral turpitude. Rather, he argues that "[t]here simply was no proof by clear and convincing evidence that Respondent committed a criminal act involving dishonesty, fraud or misrepresentation or that he had any intent whatsoever to engage in such acts." That is confirmed, the respondent submits, by the fact that he "did not make any financial gain as a result of his conduct or from the underlying conduct of the co-defendants."

---

acquisition of the knowledge that a crime was being committed, which under federal law, he had a duty to report.

 It is well settled that we review the conclusions of law drawn by the hearing court *de novo.* Rule 16–759(b)(1).[10] *See Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 27–28, 922 A.2d 554, 569–70 (2007); *Attorney Grievance Comm'n v. Mahone,* 398 Md. 257, 265–66, 920 A.2d 458, 463 (2007); *Attorney Grievance Comm'n v. Mba–Jonas,* 397 Md. 690, 700, 919 A.2d 669, 675 (2007); *Attorney Grievance Comm'n v. Hodgson,* 396 Md. 1, 6–7, 912 A.2d 640, 644 (2006); *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Attorney Grievance Comm'n v. Joehl,* 335 Md. 83, 88, 642 A.2d 194, 196 (1994) (noting that the ultimate decision as to whether an attorney has engaged in professional misconduct rests with this Court). When the factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled. *Mba–Jonas,* 397 Md. at 700, 919 A.2d at 675; *Attorney Grievance Comm'n v. Manger,* 396 Md. 134, 146–147, 913 A.2d 1, 8 (2006). Moreover, a hearing court's findings of fact will not be overruled unless we determine that they are clearly erroneous. *Mahone,* 398 Md. at 265, 920 A.2d at 463; *Attorney Grievance Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). "Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder." *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998).

 We overrule the respondent's exceptions. The respondent does not, indeed, he can not, dispute the facts—they are

---

10. Maryland Rule 16–759(b) provides:
"(1) *Conclusions of Law.* The Court of Appeals shall review de novo the circuit court judge's conclusions of law.
"(2) *Findings of Fact.*
"(A) *If No Exceptions Are Filed.* If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.
"(B) *If Exceptions are filed.* If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."

set forth in detail in the plea agreement and the Statement of Facts in support of that agreement. What he disputes is what should be made of those facts, and, in particular, whether they should, indeed must, be moderated or explained, by the respondent's subsequent testimony concerning his subjective understanding and intent. His position is that, because the facts, as they are reflected in the plea agreement and the Statement of Facts, do not specifically charge him with being a co-conspirator and are ambiguous as to the when he learned of the crimes, what criminal conduct the facts do establish is unclear and must be elucidated by extrinsic evidence, i.e., his testimony at the disciplinary hearing. More specifically, the respondent believes that his testimony not only was relevant to the issue of when and what he knew, but was required to be believed in determining his culpability and hence sanction.

The hearing court was not required to accept the respondent's explanation for his conduct. It was free to disbelieve, as it undoubtedly did, his explanation. *See Attorney Grievance Comm'n v. Powell,* 328 Md. 276, 292, 614 A.2d 102, 110 (1992) (in which, *citing Attorney Grievance Comm'n v. Nothstein,* 300 Md. 667, 684, 480 A.2d 807, 816 (1984), we stated that "[i]t is elementary that a trier of fact may elect to pick and choose which evidence [or story] to rely upon"). Moreover, a final judgment of conviction is conclusive evidence of the guilt of the crime charged. *See* Maryland Rule 16–771(g).[11] The respondent pled guilty to misprision of a

---

11. Maryland Rule 16–771(g) provides:

"(g) *Conclusive Effect of Final Conviction of Crime.* In any proceeding under this Chapter, a final judgment of any court of record convicting an attorney o f a crime, whether the conviction resulted from a plea of guilty, nolo contendere, or a verdict after trial, is conclusive evidence of the guilt of the attorney of that crime. As used in this Rule, 'final judgment' means a judgment as to which all rights to direct appellate review have been exhausted. The introduction of the judgment does not preclude the Commission or Bar Counsel from introducing additional evidence or the attorney from introducing evidence or otherwise showing cause why no discipline should be imposed."

To be sure, as the respondent argues, this Rule does not preclude his offering evidence to establish that no sanction should be imposed. That

felony and the statement of facts in support detailed the circumstances in which the crime occurred. The respondent admitted being aware of facts indicating that the named co-defendants were engaging in immigration fraud, making false statements and encouraging aliens to enter this country illegally and not reporting those crimes to the proper authorities. But the respondent also admitted taking steps to conceal the conspiracy. This was evidence of not simply a passive involvement; it demonstrated an active involvement. With this active concealment as a predicate,[12] the hearing court can hardly be faulted for concluding that the respondent engaged in conduct in violation of Rule 8.4(b) and (c)—helping and counseling violators as to how to conceal their violations is a criminal act that reflects adversely on a lawyer's honesty, trustworthiness or fitness in other regards—and, in so doing, also engaged in conduct involving dishonesty, fraud, deceit or misrepresentation. It was "the charge of misprision of a felony, as supported by the unequivocal and unambiguous statement of facts entered into the record on August 26, 2005" that the hearing court concluded constituted the misconduct in violation of the Rules of Professional Conduct. The concealment steps were clearly alleged and stated in the statement of facts and they were not disputed. That is certainly a substantial basis for the hearing court's conclusions.

■ This leaves for resolution the issue of the appropriate sanction. The petitioner recommends disbarment. It relies

---

does not give license, however, to a respondent to prove that his conviction was not justified and, on that basis, to argue for no sanction. That is essentially what the respondent has attempted in this case. The hearing court's findings in this regard, that the respondent has contradicted the plea agreement and the statement of facts in support and demonstrated a lack of remorse and appreciation for his conduct, are not erroneous.

12. We are not persuaded by the respondent's explanation of the concealment element of the statement of facts. An admission to being aware of wrong-doing and not reporting it is a far cry from being aware and counseling how to conceal that wrongdoing. Nor can counseling concealment under the circumstance of this case, in our view, be anything other than the equivalent of, if not more egregious than, making false statements or deceiving a governmental authority.

on the nature of the respondent's conduct involved in the respondent's conviction, conduct that the hearing court determined to be infected with dishonesty, fraud, deceit and misrepresentation. Noting this Court's growing intolerance for attorneys who engage in such conduct, stressing the respondent's testimony at the disciplinary hearing, which the hearing court characterized as "reflect[ing] little, if any, remorse regarding his conduct as in-house counsel for GRIS and the resulting plea and sentencing for misprision of a felony," and contending that the respondent has failed to present extenuating circumstances warranting a lesser sanction, the petitioner argues that the only appropriate sanction is disbarment.

The respondent opposes the petitioner's recommendation of disbarment. He maintains initially, citing the cases,[13] that

---

13. The respondent proffers the following as confirmatory of his assertion: *In re Felmeister*, 186 N.J. 1, 890 A.2d 334 (2006) (18 month suspension); *In re Harper*, 369 S.C. 68, 631 S.E.2d 85 (S.C.2006) (two year suspension); *Duncan v. Board of Disciplinary Appeals*, 898 S.W.2d 759, 762 (Tex.1995) (misprision of a felony not a crime of moral turpitude, requiring compulsory discipline); *In re Lockhart*, 795 So.2d 309, 310 (La.2001) (three year suspension, misprision of a felony and conspiracy to commit mail fraud); *Disciplinary Counsel v. Mesi*, 72 Ohio St.3d 45, 647 N.E.2d 473, 476 (1995) (indefinite suspension for misprision of a felony and other serious acts of misconduct); *In re Russell*, 493 N.W.2d 715, 716 (S.D.1992) (one year suspension, although, in addition to not reporting the crime, the respondent assisted the flight of the criminals "by lending money, furnishing a car, and providing his credit cards to them"); *Office of Disciplinary Counsel v. Shorall*, 527 Pa. 413, 592 A.2d 1285, 1291 (1991) (three year suspension, despite also providing the FBI with a false story supporting his client and testifying untruthfully at grand jury); *Matter of Morris*, 164 Ariz. 391, 793 P.2d 544, 547 (1990) (6 month suspension, no showing of dishonest motive or desire for pecuniary gain); *In re Fishman*, 22 A.D.3d 100, 801 N.Y.S.2d 825, 826 (N.Y.App.Div.2005) (one year suspension); *Matter of Fronk*, 238 A.D.2d 82, 666 N.Y.S.2d 1023, 1024 (N.Y.App.Div.1997) (two year suspension). *But see Office of Disciplinary Counsel v. Longo*, 94 Ohio St.3d 219, 761 N.E.2d 1042, 1043 (2002) (disbarment where respondent convicted of misprision of a felony, with knowledge of his intention to purchase marijuana out of state, also transferred funds to his partner).

We see this case as quite close to *Longo*, where it was the underlying conduct, rather than the conviction, that determined the level of the respondent's culpability. As in that case, there is more in this case than simply a conviction for failing to report a crime; the respondent

"there are no reported cases in the United States finding that the crime of misprision of a felony requires automatic disbarment. A review of the reported cases from other jurisdictions shows that the general punishment is suspension from the practice of law for a period of time."

He next embraces the hearing court's finding of mitigation, adding that, in addition to having been convicted of misprision of a felony:

"The Respondent also stands as an attorney whose nearly twenty (20) years of practice were devoted to providing legal services and defenses to individuals without means or rank. He was a local leader in the practice of immigration law and an expert on the immigration consequences of criminal convictions, providing numerous presentations at judicial conferences, bar associations seminars, and offering mentoring to less experienced attorneys. He did this all without financial compensation. He taught asylum and refugee law at the Washington College of Law at the American University, published widely in the field and had a book contract with West Law prior to his conviction. He offered countless hours of pro bono advice. The Hearing Judge acknowledged the Respondent's legal services were 'stellar in nature.' That the Respondent's yearly income rarely topped $ 60,000 underscored the fact that his commitment to the practice of law was not pecuniary but to lend a helping hand to those who needed it."

In arguing for a sanction less than disbarment, the respondent poses the question as "when did he come to know about the fraud ... and ... was his behavior so egregious, when juxtaposed against the Respondent's prior twenty (20) years of legal services, that the public need be protected from him, and

---

participated in the crime, by taking steps to conceal it. In any event, we do not agree that a sanction less than disbarment, imposed in those cases where the respondent actually and positively assisted the perpetrator, *see, e.g., Shorall; In re Russell,* was appropriate. Those cases simply are not persuasive.

perhaps equally important, ought the public be deprived of his future services."

■ This Court has made clear that the well settled purpose and goal of attorney discipline proceedings is to protect the public, not to punish the erring attorney. *Mba–Jonas*, 397 Md. at 702–703, 919 A.2d at 677; *Attorney Grievance Comm'n v. Rees*, 396 Md. 248, 254, 913 A.2d 68, 72 (2006). *See Attorney Grievance Comm'n v. Parker*, 389 Md. 142, 155, 884 A.2d 104, 112 (2005); *Attorney Grievance Comm'n v. Culver*, 381 Md. 241, 283–84, 849 A.2d 423, 448–49 (2004).

> "That purpose is achieved, the public is protected, when the sanctions are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 533, 819 A.2d 372, 375 (2003). While the circumstances of each case-the nature and effect of the violations-are critical, and ordinarily decisive, factors in determining the severity of the sanction to be imposed, *Parker*, 389 Md. at 155, 884 A.2d at 112, there are other important factors we have identified, including 'the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the Respondent to continue in practice, and any mitigating or aggravating factors,' " *Attorney Grievance Comm'n v. Monfried*, 368 Md. 373, 396, 794 A.2d 92, 105 (2002), the attorney's remorse for the misconduct, *Attorney Grievance Comm'n v. Wyatt*, 323 Md. 36, 38, 591 A.2d 467, 468 (1991), the likelihood of repetition of the misconduct, *Attorney Grievance Comm'n v. Freedman*, 285 Md. 298, 300, 402 A.2d 75, 76 (1979), and the attorney's prior grievance history. *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 362, 347 A.2d 556, 561 (1975)."

*Rees*, 396 Md. at 254–55, 913 A.2d at 72.

What this Court said in *Attorney Grievance Comm'n v. Ward*, 396 Md. 203, 218, 913 A.2d 41, 50 (2006) has a particular relevance to the case *sub judice:*

"It is well settled that '[d]isbarment ordinarily should be the sanction for intentional dishonest conduct.' *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 (2001). *See Attorney Grievance Comm'n v. Pennington,* 387 Md. 565, 597, 876 A.2d 642, 660–61 (2005); *Attorney Grievance Comm'n v. Lane,* 367 Md. 633, 646, 790 A.2d 621, 628 (2002). This is so, because '[u]nlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse.' *Vanderlinde,* 364 Md. at 418, 773 A.2d at 488. Thus, like in the case of a misappropriation of entrusted funds, *see Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991), in the absence of compelling extenuating circumstances justifying a lesser sanction, intentional dishonest conduct by a lawyer will result in disbarment."

In *Vanderlinde,* we addressed what would suffice as extenuating circumstance justifying a lesser sanction, where intentional dishonest conduct by an attorney has been established. We said that the compelling extenuating circumstances must be "present and associated with the illegal or improper acts at the time committed." *Vanderlinde,* 364 Md. at 397, 773 A.2d at 475. We elucidated this point in the holding:

"in cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other

serious criminal conduct, whether occurring in the practice of law, or otherwise."

*Id.* at 413–414, 773 A.2d at 485 (emphasis in original).

There have been no compelling extenuating circumstances shown in this case. The respondent's past "stellar" practice, his pro bono commitment, his lack of pecuniary over-reaching or motivation and his mentoring, while all are commendable and are not disregarded, do not meet the standard we have set for compelling extenuating circumstances that would justify a lesser sanction than disbarment. Accordingly, we adopt the petitioner's recommendation. Disbarment is the appropriate sanction in this case.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST REX B. WINGERTER.**