913 A.2d 68

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Natalie H. REES.

Misc. Docket AG No. 49, Sept. Term, 2005.

Court of Appeals of Maryland.

Dec. 20, 2006.

Raymond A. Hein, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

Natalie H. Rees, Towson, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, C.J.

The respondent, Natalie H. Rees, was charged by the petitioner, the Attorney Grievance Commission of Maryland, in a Petition For Disciplinary Action, filed by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] with violating a number of the Rules of Professional Conduct, as adopted by Maryland Rule 16–812, and Maryland Code (2004 Repl.Vol.,

---

1. Maryland Rule 16–751, as relevant, provides:
   "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval
   of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2006 Cum.Supp.), § 10–306 of the Business and Occupations Article. Following a hearing, the Hon. Robert N. Dugan, of the Circuit Court for Baltimore County, to whom the Court referred the matter, *see* Rule 16–752(a),[2] to make findings of fact and draw conclusions of law, *see* Rule 16–757(c),[3] concluded that violation of only two of them, Rules 1.15(a)[4] and 8.1,[5]

---

**2.** Rule 16–752(a) provides:

"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

**3.** Maryland Rule 16–757(c) provides:

"(c) Findings and conclusions. The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

**4.** Subsection (a) of Rule 1.15, Safekeeping Property, provides:

"A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation."

**5.** Rule 8.1, Bar Admission and Disciplinary Matters, provides, as relevant:

"An applicant for admission or reinstatement to the bar or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

     \*     \*     \*     \*     \*     \*

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

and of § 10–306,[6] had been proven.[7]

Noting that the allegations "involve two disgruntled former clients," who had retained the respondent to assist them, as partners, to adopt a child, the hearing court found that the respondent did not respond to Bar Counsel's request for information in answer to those allegations in a timely manner. The request from Bar Counsel was sent to the respondent by regular mail on September 21, 2004 and delivered to her by certified mail on October 21, 2004. Aware of the respondent's personal problems, generally relating to the care of a bipolar child, the hearing court nonetheless was "satisfied by clear and convincing evidence that Respondent's delay in responding to the allegations was not excusable," and, thus, that the respondent violated Rule 8.1(b).

With respect to the Rule 1.15 and § 10–306 violations, the hearing court found that they were supported by the respondent's billing records. They established that four days after depositing in her escrow account the $ 4,000.00 retainer re-

6. Maryland Code (2004 Repl.Vol., 2006 Cum.Supp.) § 10–306 of the Business and Occupations Article provides:

"A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

7. The hearing court rejected the allegations, made pursuant to Rule 1.4, that the respondent failed to communicate with her clients and those made pursuant to Rule 1.5, that she charged an unreasonable fee, as well as the related allegation, pursuant to Rule 8.4(c), that she fabricated her billing statements and did not actually perform the services for which she billed. It branded these allegations as "frivolous," reflecting "a typical unhappy client second guessing his former lawyer," and chided, "Bar Counsel should have used better judgment." Bar Counsel's allegations with regard to Rules 1.15(b) and 1.16(d), pertaining to a lawyer's obligation upon terminating representation, fared no better. The hearing court was apparently persuaded by the respondent's testimony "that it was her practice to send all her clients billing statements every two months," as it found the testimony of the clients to the contrary to "lack credibility."

There were other Rule violations charged in the Petition: Rules 1.1, Competence, 1.2, Scope of Representation, 1.3, Diligence, 8.4(b) and (d). The hearing court did not address them and the petitioner has not excepted to that omission. Consequently, we assume that those charged Rule violations were not presented for resolution.

ceived from her clients, the respondent withdrew $ 3,000.00. At that time, most of the fee remained unearned and, in fact, counting all of the work recorded as having been done on the case over a 19 day period, including the previous month, after the deposit, as of April 7, 2003, the hearing court found, the respondent had earned only $ 860.00 of the fee. Also as of that date, the escrow balance was $ 1,307.39, considerably less than the $ 3,140.00 it was required to be, or would have been, had the withdrawal not occurred. The hearing court further found:

"Even taking into account the potential for some unrecorded services rendered and the fact that at the time the Respondent was honestly mistaken that the appropriate billing rate was two hundred fifty ($250.00) per hour, a shortage of funds existed on that date. Although the Respondent was not certain that the four thousand dollar ($4,000) deposit on April 3rd, 2003 was from [the respondent's clients], that is the logical inference to be drawn from the evidence."

"... Aside from approximately three hundred dollars ($300.00), the only money held in escrow related to Respondent's representation in this case. Four days after the escrow deposit, Rees should not have been confused as to whether three thousand dollars ($3000.00) had already been earned when those funds were improperly withdrawn."

It rejected the respondent's explanation based on her change from a retainer fee arrangement to an engagement fee arrangement,[8] finding that "[u]nder all the circumstances, this explanation cannot stand careful scrutiny."

The respondent did not file any exceptions to the hearing court's findings of fact or conclusions of law. In fact, at

---

**8.** The hearing court inadvertently switched the two arrangements, the respondent switched from "retainer" to "engagement." On this subject, it stated:

"After twenty-four years in practice, Rees began using an engagement agreement rather than a retainer agreement for new clients. Existing clients who had funds in escrow were advised of the change and were given the options of: 1) switching the remaining portion of the retainer, if any, to a non-refundable engagement fee; or 2) receiving a refund of the balance of their retainer and retaining new counsel."

argument, she expressly acknowledged her misconduct and made clear that she was not challenging that aspect of the case. The petitioner, on the other hand, has taken exceptions to the hearing court's failure to find violations of Rules 1.15(b)[9] and 1.16(d).[10] The basis for these exceptions is essentially that the respondent acknowledged in testimony that she failed to send copies of her billing statement to her clients in response to their July letter and that, according to her own testimony, she was made aware at the peer review hearing of an error in billing her clients and conceded that she owes them a refund of $257.00. The petitioner makes the point that the refund, although conceded, has not yet been made.

The hearing court expressly determined that the respondent's clients were not credible when they testified that they had not received billings from the respondent. On the other hand, immediately after making that finding, it observed:

"It certainly would have been a better practice for the Respondent to have re-submitted the aforesaid billings to her clients as well as to have refunded two hundred fifty-seven ($257.00) that is due to them." [11]

---

**9.** "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property."

**10.** Rule 1.16(d) provides:

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

**11.** The respondent did not read this "observation" as a finding that she owed the clients the amount mentioned. It was her view, which she

Thus, its findings appear to reflect that it found that a refund, in the amount contended by the petitioner, was in fact due to the respondent's clients. Accordingly, we sustain the petitioner's exceptions.

This brings us to the sanction that is appropriate in this case. As to that, the petitioner recommends that the respondent be indefinitely suspended from the practice of law. That sanction is, it says, "appropriate for the misconduct in this case," and "will serve the purpose of protecting the public by requiring the Respondent, before she is permitted to practice law again, to demonstrate in a reinstatement petition that the personal issues described in this proceeding have been addressed sufficiently to enable her to render adequate legal service and to conduct her practice in compliance with the Rules of Professional Conduct." Acknowledging her misconduct and expressing her embarrassment as a result, the respondent asks the Court to impose no sanction. The misconduct, she maintains, is an isolated instance, which is not likely to be repeated.[12]

The purpose of attorney discipline is well settled-to protect the public, not to punish the erring attorney. *Attorney Griev. Comm'n v. Parker*, 389 Md. 142, 155, 884 A.2d 104, 112 (2005); *Attorney Griev. Comm'n v. Culver*, 381 Md. 241, 283–84, 849 A.2d 423, 448–49 (2004). That purpose is achieved, the public is protected, when the sanctions are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 533, 819 A.2d 372,

offered at argument, that she had earned all of the fees billed, and more. She asserted, it is the nature of the family law practice that many more hours are spent working on a client's case than is billed and argued that is what occurred in this case.

**12.** We note that while that may be the rule, there are exceptions. *See Attorney Griev. Comm'n v. Protokowicz*, 329 Md. 252, 263, 619 A.2d 100, 105 (1993), which this Court, in *Attorney Griev. Comm'n v. Franz*, 355 Md. 752, 762, 736 A.2d 339, 344 (1999), cited as an example of conduct so egregious that, although an aberration, warranted the imposition of a significant sanction.

375 (2003). While the circumstances of each case-the nature and effect of the violations-are critical, and ordinarily decisive, factors in determining the severity of the sanction to be imposed, *Parker,* 389 Md. at 155, 884 A.2d at 112, there are other important factors we have identified, including "the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the Respondent to continue in practice, and any mitigating or aggravating factors," *Attorney Griev. Comm'n v. Monfried,* 368 Md. 373, 396, 794 A.2d 92, 105 (2002), the attorney's remorse for the misconduct, *Attorney Griev. Comm'n v. Wyatt,* 323 Md. 36, 38, 591 A.2d 467, 468 (1991), the likelihood of repetition of the misconduct, *Attorney Grievance Comm'n v. Freedman,* 285 Md. 298, 300, 402 A.2d 75, 76 (1979), and the attorney's prior grievance history. *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975).

■ The misconduct that the respondent has been found to have engaged in is quite serious. We are satisfied, however, that it is misconduct that is isolated and is not likely to be repeated. The respondent has readily admitted the misconduct, acknowledged its seriousness and expressed her embarrassment and, thereby, her resolve not to repeat it. She has no negative grievance history. The one prior matter was resolved in her favor. We believe that, under these circumstances, a thirty day suspension, commencing thirty days from the date of the filing of this opinion, will protect the public interest and, therefore, is the appropriate sanction in this case.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST NATALIE H. REES.