69 A.3d 1040

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Jimmy Anthony BELL.**

**Misc. Docket AG No. 21, Sept. Term, 2012.**

Court of Appeals of Maryland.

July 8, 2013.

544

JaCina N. Stanton, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Derrick G. Hamlin, Esquire, Baltimore, MD, for Respondent.

Argued before BELL, C.J.,* HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

---

* Bell, C.J., participated in the hearing of the case, in conference in regard to its decision and in the adoption of the opinion, but he had retired from the Court prior to the filing of the opinion.

GREENE, J.

The Attorney Grievance Commission of Maryland ("Petitioner" or "Bar Counsel"), acting pursuant to Maryland Rule 16–751(a), filed a "Petition For Disciplinary or Remedial Action" against Jimmy Anthony Bell ("Respondent" or "Bell"), on May 23, 2012. Petitioner charged Bell with violating various Maryland Lawyers' Rules of Professional Conduct ("MLRPC"[1] or "Rule"), specifically Rule 1.1 (Competence),[2] Rule 1.15(a) (Safekeeping Property);[3] and Rule 8.4(a) and (d) (Misconduct).[4] Petitioner also charged Bell with violating several Maryland Rules of Procedure ("Maryland Rule" or "Md. Rule"), including Maryland Rule 16–606.1(a)(1), (Attorney Trust Account Record–Keeping);[5] Maryland Rule 16–

---

**1.** Any reference herein to the MRPC is also a reference to MLRPC.

**2.** MLRPC 1.1 provides: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**3.** MLRPC 1.15(a) provides: A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

**4.** MLRPC 8.4 provides in part: It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; (d) engage in conduct that is prejudicial to the administration of justice[.]

**5.** Maryland Rule 16–606.1 provides in relevant parts:
(a) Creation of records. The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:
(1) Attorney trust account identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was

607(a) (Commingling of Funds);[6] and Maryland Rule 16–609(a)–(c) (Prohibited Transactions).[7] Pursuant to Maryland Rule 16–752(a) (Order Designating Judge), this Court referred the matter to Judge DaNeeka L. Cotton of the Circuit Court for Prince George's County to conduct an evidentiary hearing and to render findings of fact and recommend conclusions of law pursuant to Maryland Rule 16–757.

On November 1, 2012, Judge Cotton conducted an evidentiary hearing, during which Bell was represented by counsel, and thereafter the hearing judge issued "Findings of Fact and Conclusions of Law," in which she found that Bell's acts constituted violations of MLRPC 1.1, 1.15(a), 8.4(a) and 8.4(d), as well as Maryland Rules 16–606.1(a)(1), (a)(2), and (a)(3), 16–607(a), 16–609(a)–(c). In doing so, Judge Cotton stated the procedural history and made the following findings of fact:[8]

### *Procedural History*

This case arises from a Petition for Disciplinary Action filed against the Respondent, Jimmy Anthony Bell, in the Court of Appeals of Maryland on May 23, 2012. The Court of Appeals designated the undersigned judge of the Circuit Court for Prince George's County to hear the action. The Respondent was served with the Petition for Disciplinary or Remedial Action on July 11, 2012. On August 9, 2012, Petitioner filed a Motion for Order of Default against the

---

opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.

**6.** Maryland Rule 16–607(a) provides: General prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b of this Rule.

**7.** Maryland Rule 16–609(a) provides: An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

**8.** Citations to exhibits omitted.

Defendant for his failure to file an answer to the petition pursuant to Maryland Rule 16–754(a). On August 21, 2012, Respondent simultaneously filed an Answer to the Petition for Disciplinary Action and an Opposition to Petitioner's Motion for Default. On August 22, 2012, Petitioner withdrew its Motion for Order of Default. A hearing on this matter took place on November 1, 2012.

### Findings of Fact

\* \* \* \*

Respondent attended law school at American University, Washington College of Law, and earned his Juris Doctor in 1999. Respondent was admitted to the Maryland Bar on December 14, 1999. Respondent maintains a law office located in Fort Washington, Maryland.

On February 15, 2011, Respondent filed a lawsuit on behalf of Tracy Wiggs in the Circuit Court of Prince George's County. Respondent received a check from Tracy Wiggs in order to pay for the filing fees. However, Respondent wrote a check from his Bank of America IOLTA (hereafter the trust account) to pay for the filing fee before depositing the check received from Mr. Wiggs.[1] On February 16, 2011 Respondent disbursed trust account check number 1177 in the amount of $145.00 made payable to "the Clerk of Court." This disbursement caused Respondent's trust account balance to fall to −$143.62. Respondent intended to deposit the check he received from Mr. Wiggs into his trust account immediately, but became ill before he was able to do so. On February 18, 2011, Respondent made a $145.00 cash deposit into his trust account; restoring the overall account balance to $1.38. On February 18, 2011, Petitioner received notification from Bank of America that an overdraft had occurred on Respondent's attorney trust account.

1. The Bank of America account (ending in 7281) appears to be the only account [Bell] use[d] for his firm.

In a certified letter dated March 4, 2011, Petitioner requested that Respondent provide an explanation for the trust account overdraft and provide "client ledgers, deposit slips, canceled checks, and monthly bank statements" between November 2010 and March 4, 2011. Respondent failed to respond to Petitioner's March 4, 2011 letter, which led Petitioner to docket a complaint against Respondent. Petitioner sent a second letter to Respondent on April 12, 2011, requesting an explanation for the trust account overdraft and documentation regarding his trust account.

On June 14, 2011, Respondent submitted a response to Petitioner explaining the events surrounding the overdraft of Respondent's trust account. In his letter to Petitioner, Respondent provided a copy of check number 1177, the check that caused the overdraft, but failed to produce any other requested documentation.

The Court notes that the investigation of Respondent's case was delayed due to the lack of financial records provided. Respondent waited four months to reply to Petitioner's initial letter. Consequently, Petitioner subpoenaed Respondent's bank records from Bank of America. Once Respondent finally provided client ledgers, they were unclear and appear hastily and haphazardly prepared. Respondent later admits that he failed to keep proper records, and that the documents produced into evidence were created from memory, after Petitioner initiated the current investigation. The Court finds that Respondent's client ledgers were created retrospectively and in anticipation of disciplinary action, rather than contemporaneously maintained.

Mr. John DeBone, a paralegal for the Attorney Grievance Commission, reviewed bank statements for Respondent's trust account. As a result of his review, Mr. DeBone testified that he categorized deposits and withdrawals made from the Respondent's trust account based on client name. Mr. DeBone noted that there were a number of transactions which could not be attributed to a specific client; Mr. DeBone categorized these transactions as "Unidentified." During the hearing, Mr. DeBone testified that these "Un-

identified" transactions consisted of four deposits which totaled $25,650.00. Mr. DeBone also discovered forty-five (45) cash disbursements Respondent made to himself from his trust account, amounting to $61,950.45.

Mr. DeBone also noted disbursements, categorized as "Bell–Expenses," that were made to various business vendors, such as, DirecTV, AT & T, and Verizon. Respondent made twenty-four (24) "Bell–Expenses" from September 2009 to February 2011. Mr. DeBone's analysis also indicates that Respondent made a number of cash deposits into his trust account which he could not attribute to a specific client matter.

Based on his review of Respondent's file, and his seventeen years of experience with the Attorney Grievance Commission, Mr. DeBone concluded that Respondent was clearly keeping earned attorney's fees in his trust account, as evidenced by the fact that Respondent was paying his expenses from that account. Mr. DeBone stated that keeping some money in the account is permissible for covering maintenance fees, however the amount of money Respondent stored in his account far exceeded what is considered as an acceptable amount. At some point after his initial review of Respondent's file, Mr. DeBone received Respondent's client ledgers. Mr. DeBone testified that the funds in Respondent's trust account generally seemed to "match up," and that he did not believe Respondent was intentionally misappropriating funds from his clients. The Court finds Mr. DeBone's testimony credible.

Petitioner's initial investigation led to further concerns about Respondent's trust account for the following clients.

A. *Lloyd Carter*

Respondent filed an employment discrimination lawsuit against the District of Columbia Government on behalf of his client, Lloyd Carter. On October 13, 2009, Respondent settled Mr. Carter's case and received a contingency fee in the amount of $20,000. Respondent received the settlement check for Mr. Carter's case on February 1, 2010. Shortly

thereafter, Respondent discovered that the settlement check included funds designated for Respondent, as well as Mr. Carter. Instead of $20,000 in attorney's fees, Respondent was only entitled to a portion of the check, specifically $14,448.55, while the remaining $5,551.45 belonged to Mr. Carter.

On February 2, 2010, Respondent wrote check number 1137 from his trust account, made to "Cash," in the amount of $15,742.45. According to the client ledger for Lloyd Carter, check number 1137 represented attorney's fees earned from the Lloyd Carter case, however this amount is $1,243.55 greater than the amount actually earned on the Carter matter. When confronted about the discrepancy between attorney's fees actually earned on the Carter matter and money received, Respondent admitted that "[he] was mistaken." On February 2, 2010, Respondent did write a cashier's check to Mr. Carter in the amount of $5,551.45, however the funds for this check did not originate from Respondent's trust account.

B. *Briana Green*

On September 2, 2009, Respondent deposited $3,500.00 into his trust account for the Briana Green case. Between September 8, 2009 and September 11, 2009, Respondent made the following disbursements from his trust account, categorized as "earned fees from Briana Green case:"

| | |
|---|---|
| 9/8/09 Direct TV payment | -$ 308.09 |
| 9/8/09 Check # 1119 to Cash | -$2,000.00 |
| 9/11/09 Check # 1121 to Cash | -$1,200.00 |

The disbursements Respondent made to himself amount to $3,508.09, thus disbursing $8.09 more than was earned from the Briana Green client matter.

C. *Derrick Hunter*

Respondent represented Derrick Hunter on a child support and visitation matter. On March 2, 2010, Respondent deposited $460.00 into his trust account as attorney's fees earned in the Hunter matter. Respondent then made the

following disbursements between March 3, 2010 and March 5, 2010:

| | |
|---|---|
| 3/3/10 AT & T payment | -$206.44 |
| 3/4/10 Direct TV | -$141.47 |
| 3/5/10 Check # 1144 to Cash | -$120.00 |

Respondent disbursed a total of $467.91 to himself in the Hunter matter, exceeding the attorney's fees actually earned by $7.91.

### D. *Charles Smith*

On November 16, 2010 Respondent entered his appearance on behalf of Charles Smith. On February 2, 2011, Respondent deposited $700.00 in attorney's fees for his representation of Charles Smith. Between February 4, 2011 and February 14, 2011, Respondent made the following disbursements from his trust account:

| | |
|---|---|
| 2/4/11 AT & T | -$366.64 |
| 2/4/11 Direct TV | -$204.04 |
| 2/14/11 Check # 1178 to Cash | -$160.00 |

Respondent withdrew a total of $730.68 in attorney's fees from the Smith matter; thus receiving an excess of $30.68.

Furthermore, testimony from Mr. Lindale Alston, Respondent's accountant, revealed more egregious failures in Respondent's record keeping. Mr. Alston was hired to prepare Respondent's 2010 and 2011 taxes, however, Respondent failed to provide Mr. Alston with client records for 2010. Respondent has apparently now provided client records, trust account statements, and checks in order to prepare his 2011 taxes; however, as of the date of the hearing, Respondent has not filed taxes for 2011.

Judge Cotton further entered conclusions of law, concluding that Bell violated MLRPC 1.1, 1.15(a), 8.4(a) and (d), Md. Rule 16–606.1(a)(1), (a)(2), and (a)(3), Md. Rule 16–607(a), and Md. Rule 16–609(a)–(c). She explained:

## Conclusions of Law

\* \* \* \*

*Respondent violated MRPC 1.1; Competence*

\* \* \* \*

"Thoroughness and preparation reasonably necessary for competent representation includes the proper management of case files." *See Att'y Griev. Comm'n v. Ober,* 350 Md. 616, 630, 714 A.2d 856, 863 (1998). Incorporated within the competence requirement is a lawyer's duty to properly maintain his trust account. *See Att'y Griev. Comm'n v. Brown,* 380 Md. 661, 667–68, 846 A.2d 428, 432 (2004) (finding that an attorney's failure to properly maintain settlement monies in his escrow account demonstrated his incompetence pursuant to Rule 1.1 of the Maryland Lawyers' Rules of Professional Conduct). Failure to properly maintain a client's settlement monies in an escrow account may also demonstrate incompetence under MRPC 1.1. *See Att'y Griev. Comm'n v. Maignan,* 390 Md. 287, 296–97, 888 A.2d 344, 349 (2005).

As evidenced in his client ledgers, Respondent has exhibited a pattern of improperly handling client funds. Client ledgers indicate that Respondent has made a number of disbursements from his trust account for personal expenses, such as DirectTV, and AT & T. Furthermore, Respondent admitted during his deposition that he was not maintaining his client records as required by Maryland Rule 16–606.1, and attempted to create ledgers from memory once prompted by Petitioner. Therefore, the Court finds that Respondent incompetently handled client funds, in violation of MRPC 1.1.

*Respondent violated MRPC 1.15(a); Safekeeping of Property*

\* \* \* \*

"The mere fact that the balance in an attorney trust account falls below the total amounts held in trust supports

a *prima facie* finding of [a] violation of [Rule 1.15]." *See Att'y Griev. Comm'n v. Glenn*, 341 Md. 448, 472, 671 A.2d 463, 475 (1996) (noting that improper intent is not an element to Rule 1.15; "[t]he Court has consistently found inadvertent conduct that results in an escrow account deficit to be in violation of Rule 1.15"). On February 16, 2011, Respondent's trust account dropped to −$143.62, thus supporting a finding that Respondent has violated Rule 1.15. Though Respondent was able to replenish the account with Mr. Wiggs check just two days later, the fact that Respondent's trust account fell to a negative balance is indicia of Respondent's failure to properly safeguard client funds. Additionally, payment of filing fees in the Wiggs matter should have been paid from an operating account rather than Respondent's trust account.

Furthermore, withdrawing funds from a trust account for personal matters also constitutes a violation of Rule 1.15(a). *See Att'y Griev. Comm'n v. Moeller*, 427 Md. 66, 71, 46 A.3d 407, 410 (2012); *see also Att'y Griev. Comm'n v. Powell*, 369 Md. 462, 468–69, 800 A.2d 782, 786 (2001[2002] ) (concluding that there was clear and convincing evidence of a violation of MRPC 1.15(a) and Maryland Rule 16–607 where an attorney deposited earned fees and money received from his father into a bank account titled as an attorney trust account and used this account for personal and business purposes). As illustrated above, Respondent has made numerous disbursements from his trust account for personal expenses.

Finally, failure to maintain a complete record of the receipt and disbursement of client funds constitutes a violation of Rule 1.15. In *Attorney Grievance Commission v. Obi*, the Court of Appeals affirmed the hearing judge's conclusion that a violation of Rule 1.15(a) occurred where the attorney's "cash receipt journal, check register, statement of account, and cancelled checks failed to provide an adequate accounting of the origin of the funds in [the attorney's] escrow account." 393 Md. 643, 657, 904 A.2d 422, 430 (2006). Similarly, the documents that Respondent

has provided makes it difficult for one to discern how much money Respondent received from clients, what money placed in the account was Respondent's personal funds, and, most importantly, where the money was disbursed. In addition, Mr. Alston, Respondent's accountant, testified that Respondent had failed to provide client ledger information needed in order to prepare Respondent's 2010 taxes; further supporting the finding that Respondent failed to keep accurate accounting. Therefore, the Court finds that Respondent violated MRPC 1.15(a).

*Respondent violated MRPC 8.4(a) and (d); Misconduct*

\* \* \* \*

[T]he Court finds that Respondent violated MRPC 1.1 and 1.15(a); therefore, the Court also finds that Respondent engaged in professional misconduct in violation of MRPC 8.4(a). *See Att'y Griev. Comm'n v. Cherry–Mahoi,* 388 Md. 124, 159, 879 A.2d 58, 80 (2005) (reasoning that because respondent violated "several Rules of Professional Conduct, she necessarily violated Rule 8.4(a) as well, which finds professional misconduct where a lawyer 'violates or attempts to violate the Rules of Professional Conduct' ").

In *Attorney Grievance Commission v. James,* the Court of Appeals opined that an attorney's actions violated MRPC 8.4(d) where he was found to have used his escrow account for personal and business matters and failed to keep his client's settlement money intact until disbursement. 385 Md. 637, 649–50, 870 A.2d 229, 236 (2005); *see also Att'y Griev. Comm'n v. Zuckerman,* 386 Md. 341, 374–75, 872 A.2d 693, 713 (2005) (agreeing that a violation of Rule 8.4 occurred where the attorney misused his trust account and commingled client funds in his trust account). Similarly, Respondent has consistently used his trust account for personal matters, stored attorney's fees in his trust account, and made several disbursements from the trust account to himself. These actions constitute a prejudice to the administration of justice, in violation of Rule 8.4(d).

*Respondent violated Maryland Rule 16–606.1; Attorney Trust Account Record-keeping*

\* \* \* \*

Maryland Rule 16–606.1 requires attorneys to keep a record of their trust accounts that "chronologically shows all deposits and disbursements," as well as provide the "payee and the check number or other payment identification." *Att'y Griev. Comm'n v. Patterson,* 421 Md. 708, 727–28, 28 A.3d 1196, 1207 (2011) (overruling an attorney's exceptions to the hearing judge's determination that Rule 16–606.1 was violated when the evidence showed that the attorney failed to provide payment identification for all deposits and disbursements from his IOLTA account). In the present case, Respondent admitted that he did not maintain client ledgers in compliance with Rule 16–606.1. An examination of Respondent's client ledgers shows a number of occasions where Respondent failed to provide a purpose or description for deposits and disbursements made from his trust account. Respondent's ledgers also fail to provide the balance of funds remaining in the trust account in connection with a specific client. Respondent also stated that he created client ledgers based on his recollection of client matters, rather than "at or near the time of the deposit" or disbursement as required by the Rule. Therefore, the court finds that Respondent has violated Maryland Rules 16–606.1(a)(1), (a)(2), and (a)(3).

*Respondent violated Maryland Rule 16–607(a); Commingling of Funds*

\* \* \* \*

Pursuant to Maryland Rule 16–607, an attorney is permitted to deposit advanced fees in a trust account, however, depositing *earned fees* into a trust account is prohibited. The Court of Appeals has consistently found that Rule 16–607 has been violated when an attorney has deposited money into a trust account that was not an advancement of fees, or has used money in the trust account for personal

expenses. *See, e.g., Att'y Griev. Comm'n v. Nwadike,* 416 Md. 180, 199, 6 A.3d 287, 298 (2010) (finding a violation of Rule 16–607 where an attorney failed to keep her earned fees and reimbursed expenses in her attorney trust account separate from her client's property); *Powell,* 369 Md. at 469, 800 A.2d at 786 (finding that an attorney had commingled funds by depositing earned fees and personal money into his attorney trust account).

There is no evidence that Respondent used any other bank account in connection with his law practice. To the contrary, Respondent's trust account was used to safeguard settlement money, pay filing fees to the Clerk of the Court, accept cash deposits, and pay personal bills. Review of Respondent's client ledgers demonstrates that he consistently deposited money designated as earned attorney's fees into the trust account. For example, in the Green client matter Respondent deposited earned attorney's fees into his trust account; however said income should have been deposited in an operating account and kept separate from client funds. Therefore, Respondent improperly deposited earned fees in his trust account. Additionally, Mr. DeBone testified that Respondent was keeping earned attorney's fees in his trust account. For these reasons, the Court finds that Respondent has violated Rule 16–607(a).

*Respondent violated Maryland Rule 16–609(a), (b), and (c); Prohibited Transactions*

\* \* \* \*

*Respondent violated Maryland Rule 16–609(a)*

In *Attorney Grievance Commission v. Jones,* the Court of Appeals upheld the hearing court's determination that the attorney violated Rule 16–609 when the attorney was found to have used funds in his attorney trust account for personal matters, including payments to Comcast and his wife. *See Att'y Griev. Comm'n v. Jones,* 428 Md. 457, 468, 52 A.3d 76, 82 (2012) (finding that personal payments from the attorney trust account were unauthorized and amounted to misappro-

priation of funds). The present case is analogous to *Jones.* The Court concludes that the payments Respondent made to third parties, such as AT & T and DirectTV, are personal and amount to unauthorized use of funds, in violation of Rule 16–609(a).

### Respondent violated Maryland Rule 16–609(b)

Rule 16–609(b) explicitly prohibits an attorney from writing checks from a trust account that are made payable to cash or to bearer. The Court finds that Respondent wrote forty-five (45) checks payable to cash from September 1, 2009 through April 30, 2011; these checks amount to $61,950.45 in total. Therefore, the Court concludes that Respondent violated Maryland Rule 16–609(b).

### Respondent violated Maryland Rule 16–609(c)

Rule 16–609(c) prohibits an attorney from disbursing funds from a trust account if a disbursement would create a negative account balance. In September 2009 Respondent made a payment to Direct TV and issued two checks to cash as a form of attorney's fees he earned in the Green matter. Respondent disbursed an extra $8.09 than he was entitled to, thus creating a negative balance for the Green case. In March 2010, Respondent made one AT & T payment, one Direct TV payment, and issued a check to cash as attorney's fees earned in the Hunter case. Respondent disbursed an extra $7.91 in this case, causing a negative balance in the Hunter matter. Most recently, in February 2011, Respondent made one AT & T payment, a Direct TV payment, and issued a check to cash, as attorney's fees in relation to the Smith matter. Respondent disbursed $30.68 more than he earned, thus resulting in a negative balance for the Smith case. Finally, on February 11, 2011, Respondent issued a check for $145.00 which caused his entire trust account balance to fall to −$143.62.

Petitioner has provided clear and convincing evidence that the Respondent's actions created a negative balance with regard to three client matters, as well as creating a negative

**558**

balance to all client matters in the aggregate. Therefore, Respondent has violated Maryland Rule 16–609(c).

## Discussion

In attorney discipline proceedings, "this Court has original and complete jurisdiction and conducts an independent review of the record. . . . [T]he hearing judge's findings of fact generally will be accepted unless they are clearly erroneous." *Attorney Grievance Comm'n v. Cherry–Mahoi,* 388 Md. 124, 152, 879 A.2d 58, 76 (2005) (citations omitted). The proposed conclusions of law of the hearing judge are reviewed *de novo. Attorney Grievance Comm'n v. West,* 378 Md. 395, 410, 836 A.2d 588, 596 (2003).

Maryland Rule 16–759(b)(2)(A) provides, "[i]f no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any." In other words, we deem the hearing judge's findings of fact "correct if (1) they are not clearly erroneous, or (2), at the Court's option, if neither party filed exceptions to them." *Attorney Grievance Comm'n v. Kremer,* 432 Md. 325, 334, 68 A.3d 862, 868 (2013) (citations omitted). After a review of the record, and because neither Petitioner nor Bell filed exceptions to the Circuit Court's Findings of Fact, we conclude that Judge Cotton's determinations as to the facts are supported by clear and convincing evidence. As to her conclusions of law, the hearing judge determined that Bell violated MLRPC 1.1; 1.15(a); 8.4(a) and (d); Md. Rule 16–606.1(a)(1), (a)(2), and (a)(3);[9] Md. Rule 16–607(a); and Md. Rule 16–609(a)–(c). Based upon our assessment of the record,

---

9. We note that the Petition for Disciplinary or Remedial Action alleges a violation of Md. Rule 16–606.1(a)(1), but does not allege a violation of Md. Rule 16–606.1(a)(2) or (a)(3). The hearing judge, therefore, erred in finding violations that were not alleged. *See Attorney Grievance Comm'n v. Patton,* 432 Md. 359, 377–78, 69 A.3d 11, 21–22 (2013) (sustaining exceptions to violations of MLRPC that were not charged); *Attorney Grievance Commission v. Sapero,* 400 Md. 461, 487, 929 A.2d 483, 498 (2007) ("This Court has . . . held that an attorney may not be found guilty of violating a Rule of Professional Conduct unless that Rule is charged in the Petition For Disciplinary or Remedial Action.").

we agree with the hearing judge's conclusions of law, except as to any violation of Md. Rule 16–606.1(a)(2) and (a)(3).

## Sanction

■■■■ Our goal when imposing sanctions "is to protect the public [and the public's confidence in the legal profession], not to punish the erring attorney." *Attorney Grievance Comm'n v. Usiak*, 418 Md. 667, 689, 18 A.3d 1, 14 (2011) (citations omitted); *see also Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 30, 922 A.2d 554, 571 (2007); *Attorney Grievance Comm'n v. Rees*, 396 Md. 248, 254, 913 A.2d 68, 72 (2006). Sanctions protect the public when they deter future offending conduct and remove "those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Attorney Grievance Comm'n v. Gore*, 380 Md. 455, 471–72, 845 A.2d 1204, 1213 (2004) (citation omitted). When sanctions are imposed, they should be "commensurate with the nature and gravity of the violations and the intent with which they were committed." *See Attorney Grievance Comm'n v. Stein*, 373 Md. 531, 537, 819 A.2d 372, 375 (2003) (citation omitted). "Although ignorance does not excuse a violation of disciplinary rules, a finding with respect to the intent with which a violation was committed is relevant on the issue of the appropriate sanction." *Attorney Grievance Comm'n v. Obi*, 393 Md. 643, 658, 904 A.2d 422, 430 (2006) (quotation omitted). In cases where the hearing court has found a violation of MLRPC 1.15(a), but no finding of intentional misappropriation, "we have imposed sanctions that range widely according to the circumstances of each case." *Obi*, 393 Md. at 658, 904 A.2d at 430–31. We have said that for unintentional misappropriations, not resulting in financial loss to a client, and out of concern for the protection of the public as a result of an attorney's violations, an indefinite suspension is ordinarily the appropriate sanction. *See Attorney Grievance Comm'n v. Khandpur*, 421 Md. 1, 25, 25 A.3d 165, 179 (2011); *Attorney Grievance Comm'n v. Seiden*, 373 Md. 409, 423–24, 818 A.2d 1108, 1116–17 (2003); *Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 687, 802 A.2d 1014, 1028 (2002).

Further, to determine the appropriate sanction, we consider the facts of the case and also balance any aggravating or mitigating factors that are present. "[An] attorney's prior grievance history, as well as facts in mitigation, constitutes part of those facts and circumstances. We also look to our past cases involving attorney discipline when imposing sanctions." *Attorney Grievance Comm'n v. Paul,* 423 Md. 268, 284–85, 31 A.3d 512, 522 (2011) (citations omitted). Bar Counsel points to two aggravating factors that often guide our assessment of the appropriate sanction, namely, (a) prior disciplinary offenses and (b) the multiple offenses committed. According to Bar Counsel, the appropriate sanction for Bell's misconduct is an indefinite suspension with the right to reapply after ninety (90) days. Here, Bell made "forty-five (45) cash disbursements … payable to himself and transferred funds twenty[-]four (24) times to various vendors (including Verizon, AT & T, etc.) originating from his trust account." In addition, it is undisputed that, in 2005, Bell received a reprimand for attempting to obtain from a client an unreasonable fee in violation of MLRPC 8.4(a).[10] Bell recommends that the we impose no sanction beyond a reprimand.

There are several mitigating factors present that we generally consider in deciding whether to lessen what would be otherwise an appropriate sanction. *See Paul,* 423 Md. at 285–86, 31 A.3d at 523. Here Bell emphasizes that he voluntarily took corrective actions with regard to his mishandling of his trust account. In February 2012, he participated in a course, apparently presented by the Maryland State Bar Association, to address his record-keeping problems. Also not one of Bell's clients alleges that he owes them money. Moreover, Bell maintains that he did not intend to misappropriate any funds.

---

10. Although the hearing judge concluded that Bell had no prior disciplinary proceedings, this was obviously incorrect because Bell conceded at the hearing before this Court that a reprimand was imposed as indicated in a letter to him from Bar Counsel dated November 22, 2005.

Essentially, Bar Counsel relies on two cases that he maintains are analogous to the present case to support its recommendation that we impose the sanction of indefinite suspension with the right to reapply after ninety (90) days. The two cases cited are *Attorney Grievance Comm'n v. DiCicco*, 369 Md. 662, 802 A.2d 1014 (2002) and *Attorney Grievance Comm'n v. Mba–Jonas*, 397 Md. 690, 919 A.2d 669 (2007). Petitioner also points to *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 922 A.2d 554 (2007) as a case where an attorney mishandled and commingled trust funds and we suspended the attorney indefinitely but permitted Goff to reapply for admission after 60 days.

In *DiCicco*, we imposed a sanction of indefinite suspension with the right to reapply after ninety (90) days. We held that "[w]here there is no finding of intentional misappropriation ... and where the [attorney's] misconduct did not result in financial loss to any of the respondent's clients, an indefinite suspension ordinarily is the appropriate sanction." *DiCicco*, 369 Md. at 687, 802 A.2d at 1028. In that case, the hearing judge determined that DiCicco violated, among other rules, MRPC 1.15(a) by commingling client funds and using his trust account as "his personal bank account." In support of the sanction, we noted the absence of any fraudulent intent, the lack of evidence that any client suffered financial loss from DiCicco's misconduct and the lack of evidence of any prior disciplinary problems in DiCicco's thirty eight years as an attorney. *DiCicco*, 369 Md. at 688, 802 A.2d at 1028.

In *Mba–Jonas*, the attorney mishandled his attorney trust account and trust account records in violation of MRPC 1.15, 8.4(a) and (d), Md. Rules 16–604, 16–607, and 16–609 and Md.Code, § 10–306 of the Business Occupations and Professions Article. The hearing judge determined that Mba–Jonas was out of trust with regard to several clients "due to sloppiness [and] not dishonesty." 397 Md. at 697, 919 A.2d at 674. The attorney's misconduct also involved causing overdrafts, creating inaccurate settlement records and maintaining only a few records relating to settlement transactions. We imposed

a sanction of indefinite suspension with the right to reapply for admission after ninety (90) days.

In *Attorney Grievance Comm'n v. Goff*, 399 Md. 1, 922 A.2d 554 (2007), an attorney was charged with misconduct for, among other violations, being out of trust on numerous occasions and depositing client funds into his operating account. The attorney's misconduct stemmed, in part, from issues with his computer software and hard drive. 399 Md. at 14, 922 A.2d at 562. The hearing judge noted the presence of mitigating factors, including "the respondent's lack of a prior disciplinary history," and that he "derived no personal benefit" from his misconduct, although this Court concluded that this did not mitigate his culpability. 399 Md. at 23, 31, 922 A.2d at 554, 572. We imposed the sanction of indefinite suspension with the right to reapply after sixty (60) days for violation of MLRPC 1.1, 1.3, 1.15, 8.1, 8.4, and Maryland Rule 16–609 and Md.Code, § 10–306 of the Business Occupations and Professions Article. 399 Md. at 31, 922 A.2d at 572.

■■■ Consistent with the cases of *DiCicco*, *Mba–Jonas*, and *Goff*, we agree with Petitioner that aggravating factors should be considered in the calculus of an appropriate disposition of this case. Bell's continuous mishandling of his trust account and prior reprimand are factors to be considered. In mitigation of his misconduct, however, we recognize that Bell corrected the trust account overdrafts, did not intend to defraud his clients and attended (after being contacted by Bar Counsel regarding the problems revealed in this case) a course to improve his record-keeping skills.

In view of the facts of the present case and the need to balance the aggravating and mitigating factors, we hold that the appropriate sanction is an indefinite suspension with the right to reapply for admission after thirty (30) days. We emphasize that the gravamen of Bell's misconduct was his commingling and mishandling of client trust funds and his "hastily and haphazar[d]" attempt to create records to satisfy Bar Counsel's inquiry. Our response sends a clear message that such conduct, consistent with our case law, is unaccepta-

ble and notwithstanding Bell's efforts to correct his misconduct and protect his clients are important mitigating factors.

■ In reaching the conclusion that Bell should "sit-out" 30 days rather than 90 days, as suggested by Bar Counsel, we note that Bell's misconduct falls within that range of sanctions imposed in *DiCicco, Mba–Jonas,* and *Goff* as well as *Attorney Grievance Comm'n v. Khandpur,* 421 Md. 1, 25 A.3d 165 (2011) and *Attorney Grievance Comm'n v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003). The common thread running through the cases mentioned above is that an attorney's careless or uninformed mishandling or commingling of client trust funds in violation of the safekeeping requirements of MLRPC 1.15, absent any intent to defraud the client or financial loss to the client, will ordinarily result in a sanction of indefinite suspension. The weighing of aggravating versus mitigating factors ordinarily will bear on whether and how long a minimum "sit-out" period may be imposed before reinstatement may be sought.

In *Khandpur,* 421 Md. at 26, 25 A.3d at 180, we imposed a sanction of indefinite suspension with the right to reapply after sixty (60) days where an attorney, who had no intent to defraud his clients, failed to represent them with reasonable diligence, failed to keep proper records for his attorney trust account, failed to properly hold client payments in trust until earned, and frustrated Bar Counsel's investigation by carelessly making false statements. *Khandpur* violated MLRPC 1.3, 1.15(a) and (c), 8.1(b), and 8.4(d).

In *Seiden,* we pointed out that this Court has "issued sanctions ranging from a public reprimand to a 90–day suspension where ... the lawyer's violative conduct did not amount to an intentional misappropriation or dishonesty." 373 Md. at 423–24, 818 A.2d at 1116–17; *see also* cases cited therein. Specifically in *Seiden,* we imposed a sanction of indefinite suspension with the right to reapply after thirty (30) days where Seiden unintentionally misappropriated client funds from his attorney trust account and in doing so violated MLRPC 1.1, 1.15(b), and 8.4(a) and (b). Seiden's failure to

follow proper procedures to obtain his fee from his trust account for services rendered to an estate (the client), although unauthorized, did not amount to theft or dishonesty. We determined that there was an abundance of "mitigating evidence that provide[d] for a lesser sanction than the three-year ... ["sit-out" period] sought by Bar Counsel." 373 Md. at 424–25, 818 A.2d at 1117.

The sanction imposed in *Seiden* is the most appropriate sanction to be applied in the case *sub judice*. Although Seiden violated fewer rules than Bell, we have held that "the gravity of misconduct is not measured solely by the number of rules broken but is determined largely by the lawyer's conduct." *See Attorney Grievance Comm'n v. Culver*, 371 Md. 265, 280, 808 A.2d 1251, 1260 (2002) (quotation omitted). Similar to Bell, Seiden had mitigating and aggravating factors that were relevant to the ultimate disposition of the case. Not unlike Seiden, Bell did not intend to defraud his clients, and hopefully will not repeat his misbehavior based upon the February 2012 training in the area of proper record keeping and the resulting consequences of his misconduct. Although Seiden had no prior disciplinary actions, Bell's initiation of remedial training helped to mitigate his prior reprimand. Finally, Bell does not escape responsibility for the misuse of his trust account which involved numerous disbursements for cash and record keeping errors relating to that account over a period of approximately nineteen months. As a result, he will be indefinitely suspended from the practice of law. Although he will have the right to reapply for admission after thirty (30) days, there is no guarantee that he will be readmitted immediately after he files an application.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JIMMY ANTHONY BELL.**